CHICAGO PNEUMATIC TOOL CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 29677.   Promulgated December 5, 1930.

*George E. H. Goodner, Esq.*, and *F. C. Rohwerder, C. P. A.*, for the petitioner.

*F. R. Shearer, Esq.*, for the respondent.

OPINION.

TRAMMELL: The petitioner contends that the amount of $190,000 representing $170,000 credited to the English company, and $20,-000 credited to the Canadian company, in 1923, as the difference

between the cost to the petitioner of the merchandise in the inventories of the respective companies on January 1, 1923, and the amounts at which such merchandise had been billed to the companies, is an allowable deduction in determining its taxable net income for 1923, either as a business expense or as a loss. The respondent denies that the amount is deductible on either basis, and contends that it was in the nature of a capital expenditure made by the petitioner for the purpose of protecting and enhancing the investment already made by the petitioner as stockholder of the two companies. It was conceded at the hearing that the cost of the goods to the foreign subsidiaries on hand and included in inventory in January, 1923, had already been paid to the petitioner.

We must recognize the fact that the petitioner owned all the stock of the foreign subsidiaries and that as between the three companies it made no difference whether the petitioner retained the amount or whether the foreign subsidiaries had the benefit thereof. Taking the companies together, it made no difference. However, we are determining here, as we must do, the income of the petitioner as a separate corporation. While it was affiliated with the foreign corporations, it was neither required nor permitted to file a consolidated return with them for the year involved and neither the respondent nor the petitioner contends that this case presents a situation where the accounts should be consolidated. That issue is not involved in the case. We must also recognize the fact that by treating the corporations as entirely separate taxpayers, the petitioner has received income and has paid tax thereon by virtue of the sales to the foreign subsidiaries on the basis of the sales prices existing, as if it were an unrelated company. We can not determine tax liability of the petitioner by treating the corporations as separate for determining income without also treating them in the same way for purposes of deductions.

If the amount involved would be deductible as an ordinary and necessary expense or as a loss as between entirely separate and unrelated businesses, it should not be classified differently in this case because of the fact of affiliation, when no consolidated return was required or permitted and the taxpayer did not have the benefit of consolidating the accounts when losses of the foreign subsidiaries could be considered in determining the taxable income of the group.

It is contended by the respondent that the transaction amounted to a contribution to, or additional investment in, the capital of the foreign companies. It is of course true that the amount did add to and increase the surplus of the foreign corporations, but, on the other hand, if it were in fact an ordinary and necessary expense or a

business loss, where the returns or the accounts are not permitted to be consolidated, that fact would not be material here. It is only natural that amounts paid by one corporation may add to the surplus of the receiving corporation. We are concerned here with the paying corporation and if the amount is an ordinary and necessary expense or a business loss, on its part, it makes no difference that it adds to the surplus of the corporations receiving the payment.

This case may be distinguished from cases where the principal stockholder cancels an indebtedness owing by a corporation to him, which we have held to be in the nature of a capital contribution and not allowable as a deduction. The indebtedness for the goods involved here had already been paid. The petitioner in effect paid out money to the foreign corporations. This payment merely took the form of a credit on what was then owing. It was thus not a cancellation of indebtedness, but a payment.

This case is also distinguishable from cases involving assessments against stock. Such cases involve only the corporation to which the payments are made and not the business of the separate stockholders, but here the payment was made by the petitioner for its own business purposes and on account of its own necessities. It was not merely for the use and benefit of the corporation to which paid. Any benefit to the subsidiary corporation was merely incidental. If the corporations to which the amounts were paid were alone involved and it was merely for their benefit and purposes that the payment was made, a different situation would be presented. Under such circumstances it might well be that the amount might be considered a capital contribution.

The testimony is that the foreign companies involved could no longer carry on business on the basis of old prices due to the competition of foreign goods. During 1923 the foreign companies could not compete with other companies on the price at which the goods had been paid for. · The English and Canadian companies were headed for bankruptcy. They could not make a profit and there was serious question as to whether they could pay the petitioner the amount owing, which was between $300,000 and $400,000. The petitioner desired to have the foreign markets afforded by the English and Canadian companies as a continuing outlet for its goods and the payment by way of a credit was made of the difference between old prices and the new for this business purpose. This was not a voluntary payment or contribution to the foreign corporations. The petitioner's president, who made this adjustment, testified that it was absolutely necessary and was the " bitterest pill " he ever had

to swallow. Subsequent events showed the wisdom of the action from a business standpoint. It was not a mere voluntary transfer of surplus from one corporation to another, but a payment for what was considered, from all existing facts, a business necessity.

We can see no difference in principle between this situation and that existing in the case of *George M. Wright*, 18 B. T. A. 471, where an individual, in order to assure the continuance of the business being conducted by a corporation of which he was a stockholder, gave up certain shares of his stock to bankers. This was held to be a deductible loss. There is no real difference between paying over the stock to the company, itself, for the purpose of paying the bankers, than paying the bankers direct. See *Old Colony Railroad Co.*, 18 B. T. A. 267, and *Rensselaer & Saratoga R. R. Co.* v. *Irwin*, 249 Fed. 726.

The foreign corporations had their own separate income, their own separate capital, separate management, and their own businesses. The petitioner considered it necessary for these companies to continue to have income and to carry on their businesses and to be able to sell goods in competition with other companies engaged in the same business in foreign countries. The evidence is uncontradicted that they could not do so at the prices at which goods had been billed prior to 1923 and it was just as necessary to reduce the prices of inventories on hand for this purpose as it was to reduce the prices of goods sold in 1923.

We see no real difference in principle between the goods sold in 1923 which had already been billed but not paid for at the existing prices, and goods sold in the previous years remaining on hand in 1923 which had been paid for. In one case, in order to make the adjustment for the substantial reasons testified to, it was necessary to make a refund of a portion of the price paid. In the other case, where the goods had not been paid for, the prices were reduced and the accounts credited, yet in the latter situation the respondent has not raised any objection. Our decisions also support this view. See *Cleveland Woolen Mills*, 8 B. T. A. 49; *Helvetia Milk Condensing Co.*, 5 B. T. A. 271. The adjustment, where the goods had been paid for, necessitated an outlay, a payment, however, which was effected by credits on other bills. The same motive impelled the action in both situations. The substance of the transactions was that the petitioner found it necessary to sacrifice a part of the profits it had already made, thereby sustaining a loss of income already received in order to assure the continuance of an outlet for its products in the manner considered best for its business interests.

It may well be that all would not agree as to the wisdom or necessity of the course pursued by the petitioner. What one may consider necessary to be done, another might not, but there is no requirement that the method pursued be recognized generally as the best or that an expenditure be absolutely essential in order to be deductible as a loss incurred in business or as an ordinary and necessary expense. It may well be that the petitioner could have permitted the foreign corporations to become hopelessly involved in debt, or to have gone into bankruptcy and assumed all its debts and carried on business in an entirely different way. It could have paid its expenses direct, or, when its capital was impaired or exhausted, could have replenished it. Owning all the stock of the foreign corporations, the petitioner undoubtedly could have handled its foreign business differently from what it did, but it considered the method adopted most suitable to its business purposes. We are not to determine whether a business should be conducted in one way in preference to another, but being conducted in the manner adopted, we can not say that an expenditure was of a capital nature merely because the same result might in the end have been accomplished through the means of such an expenditure or that a loss sustained is not deductible because all would not agree as to the real necessity of sustaining it. We must consider what was actually done. The fact that this payment was made as it was may have and doubtless did prevent the necessity of a further payment into the capital or the direct payment of debts, but this fact does not make it of a capital nature and does not prevent the deduction allowed by statute for a loss actually sustained. The facts here, in our opinion, bring the case within the principle of *Cleveland Woolen Mills, supra,* where we allowed as a loss a reduction in price of goods sold made necessary by existing conditions.

From a consideration of all the evidence, we think that the expenditure involved, which took the form of credits, constituted a deductible loss in 1923 when made.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

STERNHAGEN, TRUSSELL, ARUNDELL, and MURDOCK concur in the result only.

SMITH, concurring: I concur in the result reached, but believe that the $190,000 in question should be allowed as a deduction from gross income as an ordinary and necessary expense of operation and not as a loss sustained.

VAN FOSSAN and MATTHEWS dissent.